**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| BONNIE J. CASTLE, individually and on behalf of a nationwide class of similarly situated individuals, | CASE NO. 1:19-cv-06441 |
| Plaintiff, | The Honorable Steven C. Seeger |
| v. | |
| FEDCHEX RECOVERY, LLC d/b/a FCR COLLECTION SERVICES, | Magistrate Judge Young B. Kim |
| Defendant. | |

**REPLY IN SUPPORT OF MOTION TO CERTIFY**

NOW COMES Plaintiff BONNIE J. CASTLE, by and through her attorney, James C. Vlahakis, and pursuant to FRCP 23(a) and 23(b)(3) moves submits the following as her Reply in Support of her Motion to Certify a putative class action against Defendant FEDCHEX RECOVERY, LLC d/b/a FCR COLLECTION SERVICES ("FCR"):

**I.      Introduction**

A majority of FCR's Response (Dkt. 16) is based on arguments that do not carry the day now that Defendant (by and through its attorney) has disclosed that is sent an identically formatted envelope to 4,535 persons with Illinois mailing addresses:



FCR's collection envelope violates Section 1692f(8) of the FDCPA. Section 1692f(8) makes it unlawful for a debt collector to place its name on an envelope enclosing a collection letter if the debt collector's name "indicate[s] that he is in the debt collection business." 15 U.S.C. § 1692f(8).  The Subject Envelope says Section 1692f(8) because of the fact that it lists "FCR COLLECTION SERVICES", a d/b/a that clearly demonstrates to any objective observer that FCR "is in the debt collection business."

As discussed below, contrary to FCR's Response, the class is ascertainable, sufficient numerosity exists, commonality and typically exist and Plaintiff and her counsel are adequate. Further, contrary to FCR's purposefully opaque Response, Plaintiff has demonstrated that a class action is a superior method of adjudicated whether FCR's Envelope violated Section 1692f(8) of the FDCPA.

## II. <u>Undisputed Allegations</u>

In Count II Plaintiff seeks to certify a class of Illinois residents who were sent a collection letter by FCR within one year of the filing of this action where FCR's name was visible on face of the transmission envelope. *Id.* at ¶58. The proposed Illinois based class is been defined as:  "All residents of the state of Illinois who were sent collection letters from Defendant, where Defendant's name was visible on the face of the envelope that contained the collection letters within the last year." *Id.* at ¶59.  Plaintiff alleged that class members could be ascertained through Defendant's records. *Id.* at ¶60.

FCR (through an email from its counsel) admits that over 4,500 Illinois residents were mailed the identically formatted envelope within one year of the filing of the Complaint. See **Exhibit A**. It is not clear if FCR has stopped using the Subject Envelope.

FCR does not dispute the factual allegations that relate to the present Motion:

1. Plaintiff a "consumer" as defined by Section 1692a(3) of the FDCPA.
   Ex. A, Complaint, ¶¶1, 17.

2. Defendant is a debt collector as defined by Section 1692a(6) of the FDCPA because its primary business purposes is the collection of delinquent "debts" as this term is defined by Section 1692a(5) of the FDCPA Complaint, ¶¶3-5, 8.

3. On or about September 6, 2019, Defendant sent Plaintiff a collection letter in an attempt to collect a purported medical debt that was incurred for personal use. *Id.* ¶7.

4. The envelope that Defendant used to send the 09/06/19 collection letter displayed Defendant's d/b/a, FCR COLLECTION SERVICES, through a glassine (clear plastic) opening on the envelope. Exhibit A, ¶¶23-24.

5. After reading the name "FCR Collection Services" through the Envelope's glassine opening, Plaintiff recognized that Defendant is a debt collector - as would any representative recipient of the collection letter. *Id.* at ¶¶ 28-34.

6. A Google search of "FCR Collection Services" would lead an unsophisticated consumer to Defendant's LinkedIn profile and a Business.com article where both websites would clearly identify that Defendant is a debt collector. *Id.* at ¶¶35-41.

As discussed below, FCR's violation of Section 1692f(8) constitutes a *material harm* because Section 1692f(8) protects a consumer's right to privacy regarding his/her debts. *Id.* at ¶ 48. Plaintiff is represented by counsel who is well versed in consumer class actions and the prosecution and defense of FDCPA class actions. *Id.* ¶ 61. Plaintiff fully satisfied the class certification elements set forth by FRCP 23(a) and 23(b)(3).

### III.    Argument – Plaintiff Satisfies All Class Certification Requirements

#### A.  The Class is Ascertainable and Sufficiently Numerous

FRCP 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." Although FCR's Response criticized Plaintiff's Motion for failing to properly allege numerosity and ascertainability (Dkt. 16, pp. 2-4), FCR's own admission (through its counsel) demonstrates that Plaintiff has met the elements of numerosity *and* ascertainability.

"While there is no magic number that applies to every case, a forty–member class is often regarded as sufficient to meet the numerosity requirement." *Mulvania v. Sheriff*

*of Rock Island Cty.*, 850 F.3d 849, 859 (7th Cir. 2017). Simply but, the above admissions demonstrates that (**a**) FCR ran a simple search of its records to (**b**) determine that it sent over 4,500 similarly formatted envelopes to residents of Illinois.

### B. Commonality and Typicality are Satisfied

Oddly, FCR disputes that commonality exits. Dkt. 16, pp. 4-5. The element of commonality requires a putative class representative to demonstrate that "here are questions of law or fact common to the class." Despite contending that commonality does not exist, FCR's admission explains why Plaintiff argued that "[c]ommonality 'exists in FDCPA claims when the controversy arises from a standard form debt collection letter.' *Quiroz,* 252 F.R.D. at 442 (citations omitted)." Dkt. 12, ¶15. Simply stated, FCR has admitted that it used a form collection envelope where Plaintiff has argued that the formatting of the Subject Envelope violates Section 1692f(8) of the FDPCA.

Typicality is satisfied where "the claims or defenses of the representative parties are typical of the claims or defenses of the class". Notably, FCR does not argue that the element of typicality is not met. Dkt. 16. To avoid any doubt, the mailing of a similarly formatted envelope that displayed FCR's d/b/a as a collection agency to well over 4,500 residents of Illinois demonstrates the typical nature of the proposed theory – and violation of Section 1692f(8).

### C. Plaintiff and Her Counsel Will Adequately to Represent the Proposed Class

FCR spends two pages arguing and speculating that Plaintiff and her counsel are not adequate to protect the rights of absent class members. Dkt. 16, pp. 5-6. There is no support for this argument. Plaintiff is adequate for the simple reason that she chose a consumer rights attorney to represent her – and one who is uniquely qualified because her chosen counsel was once in the ranks of the consumer rights defense bar. Mr. Vlahakis' adequacy is demonstrated in the following paragraphs.

4

Returning to Plaintiff's adequacy, it is evident that she recognizes her role as a class representative by virtue of her rejecting an individual settlement offer that was offered by Defendant to "pick" off the one and only plaintiff in a putative class action. And again, FCR's liability is all but met where it violated Section 1692f(8) of the FDCPA by including its d/b/a name (which evidence its position as a debt collector) in violation of the clear words of Section 1692f(8).

FCR's attack on proposed Class Counsel is specious. Dkt. 6 ("she cannot point to a single case where he counsel was appointed as lass counsel[.]"). This is an odd argument to make for the simple fact that no attorney would every get appointed if a defendant were allowed to object to an attorney's qualifications by arguing that he/she/they had (gasp!) "never been appointed as class counsel in any lawsuit." Dkt. 16, p. 6. And to the contrary, FCR has *ignored* the fact that Mr. Vlahakis was *appointed* to the Steering Committee in a nationwide class action against Apple, Inc., *In Re: Apple Inc. Device Performance Litigation*, 18-md-02827 (N.D. Cal. May 15, 2018) (Dkt. Entry no. 99). Mr. Vlahakis was provisionally appointed to serve as a member of the class action team only months after he switched roles to advocate for consumers. Not an insignificant accomplishment given the fact that dozens of attorneys sought appointment and were not tasked for appointment by provisional lead counsel.

While FCR's argument may have intended to say "but the class has not yet been certified", such an argument ignores the reality that class actions are not certified overnight – unless a proposed class is similar to the one at issue here – the misuse of an envelope that violates Section 1692f(8). FCR discounts the fact that Mr. Vlahakis has *defended* over a hundred consumer-based claims since 1998, and has litigated well over fifty TCPA based putative class actions. This type of experience suggests that Mr. Vlahakis' defense of prior class actions gave him the insight to know how to both defend

and *prosecute* class actions. FCR also discounts the fact that Mr. Vlahakis worked side-by-side with class counsel engage in arms-length negotiations that resulted in the court approval of dozens of FDCPA class actions.

Mr. Vlahakis' firm has the available financial and human resources to provide notice to putative class members and to litigate this case to trial. Mr. Vlahakis is committed to seeing this case through to its conclusion. For example, in the case of *Preston v. Midland Credit Management, Inc.*, 2020 U.S. App. LEXIS 1775 (7th Cir. Jan. 21, 2020), Mr. Vlahakis' client appealed the granting of a motion to dismiss in a relation to a §1692f(8) claim where the debt collector had placed the words "**TIME SENSITIVE DOCUMENT**" on a debt collection envelope. According to the Seventh Circuit:

> We conclude that the language of § 1692f(8) is clear, and its application does not lead to absurd results. To the contrary, the prohibition of any writing on an envelope containing a debt collection letter represents a rational policy choice by Congress. Consequently, we conclude that the district court erred in dismissing Mr. Preston's claim under § 1692f(8).
>
> * * *
>
> On its face, the prohibition is clear: use of *any* language or symbol on an envelope, except for the debt collector's name (if it does not indicate that the collector is in the business of debt collection) and the debt collector's address, violates subsection (8).
>
> ***
>
> The statutory language does, in fact, prohibit debt collectors from sending communications to consumers in envelopes bearing symbols that are indicative of debt collection. The language of the statute simply draws a clear line to ensure that consumers' rights are not lost in the interpretation of more subtle language.
>
> ***
>
> In sum, the meaning of § 1692f(8) is clear: When a debt collector communicates with consumers through the mails, it may not use any language or symbol on the envelope except for its business name or address, as long as the name does not indicate that he is in the debt collection business. Turning to the facts here, there is no question that the language "**TIME SENSITIVE DOCUMENT**" appears on the envelope enclosing a communication to a consumer. It is equally apparent that the language at issue does not fall within the itemized exception set forth in subsection (8): It is not Midland's

name nor its address. The inclusion of this phrase thus violates §
1692f(8), and the district court erred in dismissing the claim set
forth in Count I of Mr. Preston's complaint.

*Preston*, 2020 U.S. App. LEXIS 1775 at *2-*3, *11, *16-*18 (emphasis supplied, as in
the original envelope.

Mr. Vlahakis' experience as both a defense attorney and a class action based
lawyer is demonstrated by the relative ease in which he complied with FRCP 1 (which
states that the Federal Rules of Civil Procedure "should be construed, administered, and
employed by the court and the parties to secure the just, speedy, and inexpensive
determination of every action and proceeding") where he asked the Court to order FCR
to identify the putative class and to cause FCR to produce its most recent financial
records.[1]

Here, in contrast to behemoth class action like *In Re: Apple Inc. Device
Performance Litigation*, 18-md-02827 (where Mr. Vlahakis represents 24 class
representatives), the present case can and should be certified in short order.

**D. Superiority and Predominance are Satisfied**.

FRCP 23(b)(3) requires the following element to be satisfied – in that – "the court
finds that the questions of law or fact common to class members predominate over any
questions affecting only individual members, and that a class action is superior to other
available methods for fairly and efficiently adjudicating the controversy."

---

[1] Dkt. 20 ("By January 31, 2020, defense counsel shall provide documents to Plaintiff
confirming the number of allegedly improper letters sent by Defendant to any recipient in
Illinois. Plaintiff shall file a reply to FCR's response to the motion for class certification by
February 7, 2020. Counsel discussed subject matter jurisdiction, including whether the
Plaintiff lacked Article III standing. The Court orders the Defendant to file a brief on whether
this Court has Article III standing by February 20, 2020. Plaintiff shall file a response by March
5, 2020. Defendant shall file a reply by March 12, 2020. Counsel discussed the status of
settlement. Defendant shall provide all financial documents to the Plaintiff by January 31,
2020. Once Plaintiff has received the requested financial documents, the Court directs Plaintiff
to make a written settlement demand by February 14, 2020 or sooner[.]").

FCR's chief objection to Plaintiff meeting these elements is the fact that Plaintiff was able to summarize its satisfaction of this element in "only one sentence" – and here is what Plaintiff argued: "[h]ere, predominance is established because this case is about whether Defendant's collection letter envelope violated § 1692f(8) of the FDCPA - it did." Dkt. 16, p. 7, citing to Plaintiff's Class Certification Motion, ¶24. FCR's reading of Plaintiff's Class Certification Motion is disingenuous because FCR ignores that Plaintiff's Class Certification Motion clearly laid out the elements of FRCP 23(a)(1) and highlighted cases interpreting FRCP 23(b)(3). In summary, this is not a complicated case because it is laser focused on an offending envelope that is common and typical of the class. In addition, let us not forget that FCR's Response boldly (but misguidedly) argued that numerosity and commonality did not exist – and lost credibility by doing so.

But returning to the elements of FRCP 23(b)(3), FCR's use of a standard collection envelope – in violation of the clear prohibitions of Section 1692f(8) – should result in this Court concluding that "questions of law [and] fact common to class members" exist. FRCP 23(b)(3). Moreover, since the envelopes were admitted sent out to over 4,500 Illinois residents, it is clear that there are *no* "questions affecting only individual members." FRCP 23(b)(3). Given the fact that FCR sent out thousands of similar envelopes (something that was easy to look up), Defendant cannot seriously argue that there are real "difficulties in managing a class action" as reflected in FRCP 23(b)(3)(d).

FCR appears to suggest that it can conjure up questions affecting only individual members – by suggesting that Plaintiff "ignores that it is not a given that each proposed class member suffered a concrete injury so as to satisfy Article III standing requirements." Dkt. 16, p. 8. FCR's Response cites to *Casillas v. Madison Ave. Assocs.*, 926 F.3d 329 (7th Cir. 2019). (Dkt. 16, p. 8), but *Casillas* dealt with an alleged violation of Section 1692g(a) where the putative class representative did not seek to utilize a

statutory based *procedural* right that was denied to him. *Id.* at 332 ("Casillas filed a class action against Madison because of that omission. She did not allege that she tried—or even planned to try—to dispute the debt or verify that Harvester Financial Credit Union was actually her creditor.").

The Seventh Circuit properly rejected Mr. Casillas' contention that the debt collector's violation of 1992g(a) "constitute[d] a material/concrete breach of her rights under the [Act]." *Casillas*, 926 F.3d at 332. In particular, the court found that Mr. Casillas failed to demonstrate Article III standing by observing as follows:

> The Fair Debt Collection Practices Act protects an entirely different interest, and as we have already said, Casillas alleged no material risk of harm to that interest . . . Casillas did not allege that she would have used the information at all.
>
> ***
>
> Casillas says that the Fair Debt Collection Practices Act has likewise conferred on all debtors a right to complete information about their statutory rights. And as in *Havens Realty*, Casillas says, it is enough for her to claim that she was deprived of the information to which she was legally entitled—even if she wouldn't use it.
>
> ***
>
> In sum, Casillas alleged nothing more than a bare procedural violation of the Fair Debt Collection Practices Act. That is insufficient for purposes of Article III. See *Spokeo*, 136 S.Ct. at 1549 .

*Id.* at 338-39.

In contrast, Plaintiff has pointed *to more than* "a bare procedural violation, divorced from any concrete harm[.]" *Spokeo v. Robins*, __ U.S. __, 136 S.Ct. 1540, 149 (2016). Rather, unlike Section 1692g which points to certain language that debt collectors should convey if a debtor chooses to contact a debtor in response to the articular rights (a two part "disclose and use" interplay of the *procedural* rights conferred by Section 1692g(a)), Section 1692f states that [a] debt collector may not use unfair or

unconscionable means to collect or attempt to collect any debt." Read together, Section 1692f and Section f(8) state that "the following conduct ***is a violation of this section***:

> **Using any language or symbol**, other than the debt collector's address, **on any envelope when communicating with a consumer by use of the mails** or by telegram, *except that a debt collector may use his business name* **if such name does not indicate that he is in the debt collection business**.

(Emphasis supplied).

Simply stated, Section 1692f(8) identifies a type of disclosure that debt collectors <u>are prohibited from using</u> and FCR's envelopes clearly violated what is *prohibited* by Section 1692f(8). Put another way, the *prohibitions* of Section 1692f(8) are no mere procedural rights. For these reasons, FCR is mistaken to point to *Casillas* to argue that "it is not a given that each proposed class member suffered a concrete injury to satisfy Article III standing requirements." Dkt. 16, p. 8.

FCR goes on to mix apples and oranges arguing "[Casillas] found that the dunning letter must have risked harm to the plaintiff specifically." *Id.* FCR's position is mistaken where the procedural violation of the notification of rights afforded by Section 1692g(a) did not state a concrete injury under *Spokeo* where the consumer did not intend to use the omitted rights. What FCR did is worse. FCR ignored what is prohibited by Section 1692f(8), formatted the collection envelope to unlawfully display that it is a debt collector and sent out the offending envelope to over 4,500 Illinois residents!

FCR misses the mark (and without any citation) by arguing that "if class certification were granted in this case, separate evidentiary hearings may be necessary to determine which class member *actually received the purported offending letter*." Dkt. 16, p. 8 (emphasis supplied). That is not what *Casillas* held – if FCR intended to point to *Casillas* for support - but failed to do so. Defendant's later citations to *Andrews v. Chevy Chase Bank*, 545 F.3d 570, 577 (7th Cir. 2008) and *Pastor v. State Farm Mut.*

*Auto Ins. Co.*, 487 F.3d 1042, 1047 (7th Cir. 2007). (Dkt. 16, pp. 8-9) to support its above quoted argument are not on point as the cited cases did not involve FDCPA claims. *Andrews* involved a Truth in Lending Act Claim and *Pastor* involved a class action claim alleging State Farm purportedly committed a fraud upon its insureds.

FCR's argument that "separate evidentiary hearings *may* be necessary to determine which class member actually received the purported offending letter" (Dkt. 16, p. 8) is contrary to the law. In *Bartlett v. Heibl*, 128 F.3d 497 (7th Cir. 1997) the Seventh Circuit long ago rejected the argument that an FDCPA consumer in statutory damages based case must prove that he/she/them read the offending letter:

> The defendant disagrees . . . contends that even if the letter is confusing this is of no moment because Bartlett didn't read it. That would be a telling point if Bartlett were seeking actual damages, for example as a consequence of being misled by the letter into surrendering a legal defense against the credit-card company. He can't have suffered such damages as a result of the statutory violation, because he didn't read the letter. But he is not seeking actual damages. He is seeking only statutory damages, a penalty that does not depend on proof that the recipient of the letter was misled. All that is required is proof that the statute was violated, although even then it is within the district court's discretion to decide whether and if so how much to award, up to the $ 1,000 ceiling.
>
> If reading were an element of the violation, then Bartlett would have to prove that he read the letter. But it is not. The statute, so far as material to this case, requires only that the debt collector "send the consumer a written notice containing" the required information. § 1692g(a).

*Bartlett*, 128 F.3d at 987-88 (citations omitted). *See also, Heisler v. Convergent Healthcare Recoveries, Inc.*, 2018 U.S. 20491, *5, 2018 WL 6326414 (Dec. 4, 2018) ("as stated in the class certification order, that whether Heisler showed signs of actual confusion is irrelevant to the FDCPA claim because Heisler seeks statutory damages, "a penalty that does not depend on proof that the recipient of the letter was misled." *Bartlett v. Heibl*, 128 F.3d 497, 499 (7th Cir. 1997)").

To be fair, the word *may* was emphasized to give FCR the benefit of the doubt in case it was trying to argue *for a change in the law*, rather than arguing that this Court *must* conduct separate evidentiary hearings. FCR's argument also ignores that a FDCPA "plaintiff's individual experience and confusion with the letter . . . do not destroy . . . typicality." *Mendez v. M.R.S. Assocs.,* 2004 U.S. Dist. LEXIS 14901, 2004 WL 1745779, at *4-5 (N.D. Ill. Aug. 3, 2004).

To be clear, the purpose of the FDCPA is to protect consumers from over-reaching debt collectors – as evidence by the above discussion. In particular, Section 1692(a) of the Act recognizes that "[t]here is abundant evidence of the use of abusive, deceptive, and unfair collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." Sections 1692(b) and (c) recognize that "*[e]xisting laws and procedures* for redressing these injuries *are inadequate to protect consumers*" and that "*[m]eans other than misrepresentation or other abusive debt collection practices are available* for the effective collection of debts." (Emphasis supplied). And Section 1692(e) states that "*[i]t is the purpose of this subchapter to eliminate abusive debt collection practices* by debt collectors[.]" (Emphasis supplied). Significantly, Section 1692(e) goes on to recognize that it was enacted to protect law abiding debtor collectors from competitive disadvantage - "*[i]t is the purpose of this subchapter. . .* to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged[.]" Simply stated, FCR violated Section 1692f(8) by using language that is *specifically prohibited* by law.

FCR is wrong to argue that "it is not a given that each proposed class member suffered a concrete injury so as to satisfy Article III standing requirements." Dkt. 16, p. 8. This is not what the law says where on the issues of the application of assessment of

class-wide statutory damages. "The <u>FDCPA</u> does not require proof of actual damages as a precursor to the recovery of statutory damages." *Keele v. Wexler*, 149 F.3d 589, 593 (7th Cir. 1998). ("Proof of injury is not required when the only damages sought are statutory." *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076, 1083 (7th Cir. 2013). Defendant *appears* to be confusing FDCPA cases involving claims of actual damages where causation must be established on a class-wide basis. *McMahon v. LVNV Funding, LLC*, 807 F.3d 872, 876 (7th Cir. 2015) ("[A] plaintiff must prove causation to establish actual damages.") (citing *Crabill v. Trans Union, LLC*, 259 F.3d 662, 664 (7th Cir. 2001) ("Without a causal relation between the violation of the statute and the . . . harm, a plaintiff cannot obtain an award of 'actual damages' [under the Fair Credit Reporting Act].") ; *Thomas v. Law Firm of Simpson & Cybak*, 244 F. App'x 741, 743 (7th Cir. 2007) ("[O]nly losses flowing from an <u>FDCPA</u> violation are recoverable as actual damages."). At least FCR has not argued that consumers are too lazy or dense to read the contents of debt collection letters and one commentator on the topic of time-barred debt disclosures has argued.[1]

---

[1] This footnote serves to highlight the type of specious defense that are often mounted by the debt collection industry. In *Steffek v. Client Services, Inc.*, 2020 U.S. App. LEXIS, 1759 (7th Cir. Jan. 21, 2020), the Seventh Circuit Court of Appeals found that a debt collector violated Section 1692g(a)(2) by failing to properly identify "the name of the creditor to whom the debt is owed." During oral argument, Judge Hamilton referred to an episode of Comedian John Oliver's HBO television program, LAST WEEK TONIGHT WITH JOHN OLIVER, which Judge Hamilton characterized the episode as discussing so-called "Zombie Debts".[1] The court in *Steffek* ultimately held that a debt collector violated Section 1692g(a)(2) of the FDCPA. In the Seventh Circuit essentially held that the simple words are important where the subject collection letter identified "RE: CHASE BANK USA, N.A." followed by the words "[t]he above account has been placed with our organization for collections". The court determined that this language violated Section 1692g(a)(2), finding that the collection "letters did not say whether Chase Bank still owned the accounts in question or instead had sold the debts to another entity." *Steffek*, *1-*2, *7-*8. Returning to Judge Hamilton's reference to LAST WEEK TONIGHT WITH JOHN OLIVER during oral argument in *Steffek*, the episode in question contains refers to a "Debt Buyers Trade Group" at the 14 minute mark and continues to depict speaker at a debt buying panel (open to the public). https://www.youtube.com/watch?v=hxUAntt1z2c At the 16 minute mark a speaker appears to disagree with a fundamental purpose behind the FDCPA – that consumers should be protected from abusive debt collection practices where courts have *required collectors to use*

FCR winds up its Response by arguing that it is burdensome to have been sued for a mere technical violation of the FDCPA where it argues "there would be no significant economies from consolidating the class members' claims; rather the expense and burden to the parties, the putative class and to the judiciary would likely exceed the value of the claims." Dkt. 16, p. 8. To the contrary, "[a] class action is judicially efficient in lieu of clogging the courts with thousands of individual suits. *Sledge v. Sands*, 182 F.R.D. 255, 259 (N.D. Ill. 1998). And if FCR is arguing that its net worth can keep its doors open and pay its counsel, b*ut not sufficient to support certification of a class*, this argument has been waived. *U.S. v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1994)("Since his argument . . . is a perfunctory two-sentence argument that does not explain how those provisions "cover" this situation, and that cites no applicable authority, he has waived it.")(citation omitted). *See also, Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 712, 718 (7th Cir. 2012).

FCR was wise to avoid directly addressing its net worth because low net worth is generally not a barrier to certification. *See, e.g., Mace v. Van Ru Credit Corp.*, 109 F.3d

---

*specific disclaimers*: "I depose these plaintiffs . . . and they don't even read the letter." The following page depicts a screen capture from a portion of the speaker's comments:



338, 344 (7th Cir. 1997) (approving a recovery of $0.28 per class member and holding, we believe that a de minimis recovery (in monetary terms) should not automatically bar a class action. The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor."). *See also, Hernandez v. Midland Credit Management, Inc.*, 236 F.R.D. 406 (N.D. Ill. 2006) (approving an $8.00 per member recovery); *Kalish v. Karp & Kalamotousakis, LLP*, 246 F.R.D. 461, 464 (S.D.N.Y. 2007) (certifying FDCPA case with a $2.50 per class member recovery); *Tripp v. Berman & Rabin, P.A.*, 310 F.R.D. 499, 508 (D. Kan. 2015) (certifying FDCPA with a recovery of $2.63 per member); *Hicks v. Client Servs., Inc.*, 257 F.R.D. 699, 701 (S.D. Fla. 2009) (collecting cases and refusing to decertify a class despite evidence that class members might only receive $1.24).

## IV.    **Conclusion**

For the reasons set forth above, Plaintiff BONNIE J. CASTLE respectfully requests that this Court enter an order: (**a**) certifying the proposed Illinois based class in this case; (**b**) appointing the Plaintiff as Class Representative; and (**c**) appointing  James C. Vlahakis as Class Counsel.

Respectfully submitted,

*/s/ James C. Vlahakis*
2500 S. Highland Avenue, Suite 200
Lombard, IL 60148
Phone No.: 630-581-5456 Fax
No.: 630-575-8188
jvlahakis@sulaimanlaw.com

# <u>EXHIBIT A</u>

Below is true and accurate screen capture of defense counsel's email of 2/5/2020.



CERTIFICATE OF SERVICE

I, James C. Vlahakis, certify that on February 17, 2020, I caused to be filed the above referenced document via the district's ECF system, which shall serve a file stamped copy of this document on all counsel of record.

/s/ James C. Vlahakis