# Exhibit A

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BONNIE J. CASTLE, individually and on behalf of a nationwide class of similarly situated individuals, | CASE NO. 1:19-cv-06441 |
| Plaintiff, | The Honorable Steven C. Seeger |
| v. | |
| FEDCHEX RECOVERY, LLC d/b/a FCR COLLECTION SERVICES, | Magistrate Judge Young B. Kim |
| Defendant. | |

**PLAINTIFF'S [PROPOSED] RESPONSE IN OPPOSITION TO DEFENDANT'S AFFIRMATIVE DEFENSE OF ARTICLE III STANDING (DKT. 26)**

Plaintiff BONNIE J. CASTLE, by and through her attorney, James C. Vlahakis, submits the following as her [Proposed] Response in Opposition to Defendant's Brief in Support of Defendant's Affirmative Defense of Article III Standing (Dkt. 26):

### I. **Introduction**

Plaintiff has sued Defendant FEDCHEX RECOVERY, LLC d/b/a FCR COLLECTION SERVICES ("FCR Collection Services" or "FCR") pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* Plaintiff brought her civil action as a putative class action. Section 1692f(8) of the FDCPA prohibits a debt collector from "[u]sing any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails[.]" Section 1692f(8) allows a debt collector to show its business name on an envelope, but only "if such name does not indicate that [the business] is in the debt collection business." Endnote 1 depicts the envelope that was to mail the September 6, 2019, collection letter to Plaintiff.[i]

FCR Collection Services violated the clear prohibitions of Section 1692f(8) of the FDCPA because the front of the envelope clearly says FCR *Collection Services* (emphasis

supplied) and it is clear as day that FCR Collection Services "is in the debt collection business." Based upon an unexpressed litigation strategy, FCR Collection Services answered the Complaint, rather than move to dismiss the Complaint. In its Answer, FCR raised the affirmative defense of Article III standing.

When Plaintiff observed the subject envelope, she observed that the sender of the enclosed letter was FCR Collection Services, and easily concluded that FCR Collection Services is in the debt collection business. ECF#1, ¶¶23-24, ¶¶ 28-34. This case involves the a clear violation of Section 1692f(8) because Defendant published its d/b/a name, FCR Collection Services on the face of the collection envelope – not just to Plaintiff, but in relation to 4,500 Illinois residents were mailed the identically formatted envelope within one year of the filing of the Complaint.

To be clear, FCR Collection Services violated the FDCPA by *doing something* that is *prohibited* by the FDCPA. By violating Section 1692f(8), FCR Collection Services did not commit a mere procedural violation, devoid of harm. The manner in which FCR violated Section 1692f(8) constitutes a *material harm* because Section 1692f(8) was intended to enforce and protected the privacy rights of consumers. ECF#1, ¶ 48.

The harm resulting from FCR's violation of Section 1692f(8) has a close relationship to the harm that has traditionally been regarded as providing a basis for the common law tort of invasion of privacy. Congress expressly stated as its rationale for enacting the FDCPA on the basis that "[c]ollection abuse takes many forms, including . . . disclosing a consumer's personal affairs to friends, neighbors, or an employer". Senate Report No. 95-382, at 2, 8 (1977), as reprinted in 1977 U.S.C.C.A.N. 1695, 1696, 1702 (and listing as an example of unfair or unconscionable debt collection practice the "us[e of] symbols on envelopes indicating that the contents pertain to debt collection").

For these reasons and the argument set forth below, this Court should find that Plaintiff has satisfied Article III standing and strike FCR's affirmative defense.

## II. Standard of Review

As a former defense attorney with nearly twenty years of experience in *defending* consumer class actions, the undersigned recognizes that "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). The requirement that a class representative must have standing before seeking class-wide relief *properly* ensures "that courts do not decide abstract principles of law but rather concrete cases and controversies." *Sierra Club v. Marita*, 46 F.3d 606, 613 (7th Cir. 1995). Article III standing is satisfied where a plaintiff has "suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, (1992) (internal quotation marks and citations omitted).

As discussed below, as recognized by *Preston v. Midland Credit Management, Inc.*, 2020 U.S. App. LEXIS 1775 (7th Cir. Jan. 21, 2020), Plaintiff has suffered an invasion of a legally protected interest, one that is both concrete and particularized. Surprisingly, FCR Collection Services' Memorandum does not even discuss *Preston*.

## III. Argument – Plaintiff Easily Satisfies Article III Standing

### A. Background and Purpose of the FDCPA

In enacting the FDCPA, Congress recognized that the FDCPA would protect consumers from abusive, deceptive and unfair debt collection practices:

> [t]here is abundant evidence of the use of abusive, deceptive, and unfair collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal

3

> bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.

15 U.S.C. § 1692(a).

Congress also recognized that "[e]xisting laws and procedures for redressing these injuries are inadequate to protect consumers" and that "[m]eans other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts." 15 U.S.C. §§ 1692(b)(c). The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Section 1692f of the FDCPA prohibits debt collectors from "us[ing] unfair or unconscionable means to collect or attempt to collect any debt." In particular, Section 1692f(8) prohibits a debt collector from:

> Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

While Plaintiff recognizes that district courts have an unflagging duty to question whether Article III standing exits, respectfully, FCR Collection Services' misguided and rote invocation of Article III standing as an affirmative defense is without merit.

### B. Defendant Violated Section 1692f(8)

submission neglects to even argue that the Seventh Circuit in *Preston v. Midland Credit Management, Inc.*, 2020 U.S. App. LEXIS 1775 (7th Cir. Jan. 21, 2020) over-looked a standing argument where the debt-servicer behemoth, Midland Credit Management, Inc., did not raise Article III standing at the district court or appellate level.

In *Preston*, the Seventh Circuit reversed a district court's order dismissing the putative plaintiff's Section 1692f(8) claim, finding that the purported violation did "not create any privacy concerns" for the plaintiff, and holding as follows:

> The Court rejects Preston's argument that, when viewed in combination with MCM's address printed on the envelope, the language reveals that the letter comes from a debt collector. Taking Preston's argument to its logical conclusion, just the printing of the address, which an online search would reveal to be the location of a debt collector, would violate § 1692f(8), *but the statute explicitly allows this information*. The addition of "TIME SENSITIVE DOCUMENT" to the envelope suggests nothing about the existence of a debt. The Court therefore concludes that MCM's use of this language on the envelope falls within the benign language exception and does not violate § 1692f(8), meaning Preston cannot state a claim for a violation of § 1692f(8).

*Preston v. Midland Credit Mgmt.*, 2018 U.S. Dist. LEXIS 149910, *6-*7 (N.D. Ill. Sept. 4, 2018) (emphasis supplied).

The Seventh Circuit, in reversing, held that a debt collector's use of the words "**TIME SENSITIVE DOCUMENT**" on a debt collection envelope violated Section 1692f(8). In so holding, the Seventh Circuit found that the prohibitions set forth in Section 1692f(8) "represents a rational policy choice by Congress":

> We now reverse in part and affirm in part. We conclude that the language of § 1692f(8) is clear, and its application does not lead to absurd results. To the contrary, the prohibition of any writing on an envelope containing a debt collection letter represents a rational policy choice by Congress. Consequently, we conclude that the district court erred in dismissing Mr. Preston's claim under § 1692f(8).

*Preston*, 2020 U.S. App. LEXIS 1775 at *2.

While it is correct that the Seventh was not asked to address (and did not *sua sponte* address) Article III standing, as explained in the following Section, other courts have in the context of Section 1692f(8) claims and have found standing to exist.

## C. Violations of Section 1692f(8) Satisfy Article III

FCR Collection Services' filing does not point to any pre or post-*Spokeo* decisions involving Section 1692f(8) (Dkt. 26). FCR's omission is curious because are numerous post-*Spokeo* decisions that have found standing for a variety of Section 1692f(8) violations. For example, in *St. Pierre v. Retrieval-Masters Creditors Bureau, Inc.*, 2017 U.S. Dist. LEXIS 42875, 2017 WL 1102635, at *1 (D.N.J. Mar. 24, 2017), the plaintiff alleged that a debt collector violated Section 1692f(8) by mailing a collection letter to plaintiff that disclosed his account number through a glassine envelope. The district court dismissed the debt collector's argument that the claim failed to satisfy Article II standing, relying on *Douglass v. Convergent Outsourcing*, 765 F.3d 299 (3d Cir. 2014), a pre-*Spokeo* case.[1]

Applying *Douglass*, the district court in *St. Pierre* relied on a passage from *Douglass* where the Third Circuit held that Section 1692f(8) protected consumers from "core concern animating the FDCPA—the invasion of privacy." *St. Pierre,* 2017 U.S. Dist. LEXIS 42875, at *17-*18 (quoting *Douglass,* 765 F.3d at 303). Thereafter, *St. Pierre* reiterated that Section 1692f(8) protects a consumer's "right to be free from [a debt collector] disclosing his private information, including his account number, on any debt collection envelope." *Id.* at *19 (citing *Douglass,* 765 F.3d at 303). *St. Pierre* concluded that plaintiff had demonstrated the concreteness of his alleged injury for Article III standing purposes:

> Accordingly, because the FDCPA unambiguously grants plaintiff a statutory right to be free from the disclosure of private information that

---

[1] In *Douglass*, the Third Circuit held that a debt collector violated Section 1692f(8) by mailing an collection envelope the consumer's account number was visible through a glassine window, holding that the "disclosure implicates a core concern animating the FDCPA — the invasion of privacy." *Douglass,* 765 F.3d at 303. Additionally, the court explained that "[t]he account number is a core piece of information pertaining to [the plaintiff's] status as a debtor and [the defendant's] debt collection effect. *Disclosed to the public*, it could be used to expose [the plaintiff's] financial predicament." *Id.* (emphasis supplied).

6

could expose his status as an alleged debtor, and that the right to privacy is an interest that has long been recognized at law, the Court concludes that Plaintiff has adequately alleged the concreteness requirement under Article III.

*St. Pierre*, 2017 U.S. Dist. LEXIS 42875, *19.

*St. Pierre* was affirmed on appeal. *St. Pierre v. Retrieval-Masters Creditors Bureau*, 898 F.3d 351, 355, 358 (3d Cir. 2018). As the Third Circuit recognized, where a harm involves the invasion of privacy, such harm satisfies Article Standing because an invasion of privacy "is closely related to harm that has traditionally been regarded as providing a basis for a lawsuit in English and American courts." *Id.* at 358 (citing *Douglass*, 765 F.3d at 303, and *Spokeo*, 136 S. Ct. at 1549).

More recently, in *DiNaples v. MRS BPO, LLC*, 934 F.3d 275, (3rd Cir. 2019), the Third Circuit cited to its opinions in *Douglass* and *St. Pierre*, and held that a debt collector's use of a unencrypted "quick response" or "QR" code violated the consumer's right of privacy that was afforded by Section 1692f(8)[1]:

---

[1] The below quoted section from *DiNaples* helps explain Third Circuit found that *the mere use of a readable QR code formed the basis of the violation.* It is obvious from the court's description of the case that the plaintiff did not argue that the envelope listed the debt collector's name. Even if the envelope did, the debt collector's business name, MRS BPO, LLC, clearly does not identify it as a debt collector:

> The facts underlying this appeal are undisputed. Donna DiNaples had a credit card through Chase Bank. Eventually, she fell behind on her payments, so Chase assigned her account to a debt collection agency called MRS BPO, LLC ("MRS"). MRS sent DiNaples a collection letter as a pressure-sealed envelope that had a QR code printed on its face. QR codes, including the one here, can be scanned by a reader downloadable as an application (better known as an "app") on a smartphone. And this QR code, when scanned with a QR-code reader, revealed the following sequence: "LU4.###1813.3683994."1Link to the text of the note The string "LU4.###1813" was the internal reference number associated with DiNaples's account at MRS.

> DiNaples filed a class action lawsuit against MRS, alleging that the collection agency, by printing the QR code on the envelope, had violated the FDCPA, which prohibits debt collectors from "[u]sing any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails." 15 U.S.C. § 1692f(8). Each side eventually filed a motion for summary judgment.

> The District Court granted DiNaples's motion on liability, concluding that MRS violated the FDCPA. The District Court explained that this conclusion was required by our decision in Douglass, in which we held that a debt collector violates § 1692f(8) by placing on an envelope the consumer's account number with the debt collector. 765 F.3d at 303, 306. For the District

7

> Disclosure of the debtor's account number through a QR code, which anyone could easily scan and read, still "implicates core privacy concerns." Id. at 304. The debt collector has "displayed core information relating to the debt collection" that is "susceptible to privacy intrusions." *Id.* at 305. Whether disclosed directly on the envelope or less directly through a QR code, the protected information has been made accessible to the public. And as we concluded in *St. Pierre*, such an invasion of privacy "is closely related to harm that has traditionally been regarded as providing a basis for a lawsuit in English and American courts." 898 F.3d at 357-58. It thus follows from our *Douglass* and *St. Pierre* decisions that DiNaples has suffered a sufficiently concrete harm.

*DiNaples*, 934 F.3d at 280.

As discussed above and explained in footnote 2, Article III standing existed where account numbers were show through a glassine window (*St. Pierre*) and where an unencrypted QR codes was exposed (*DiNaples*). Logic dictates that Plaintiff has satisfied Article III standing where the envelope at issue clearly identifies it was sent by a debt collector. In fact, FCR Collection Services' placement of its name on the envelope in questions is an even more significant *violation of privacy* than the FDCPA was enacted to protect against.[1]

---

> Court, there was no meaningful difference between displaying the account number itself and displaying a QR code — scannable "by any teenager with a smartphone app" — with the number embedded. *DiNaples v. MRS BPO, LLC*, No. 2:15-cv-01435-MAP, 2017 U.S. Dist. LEXIS 192255, 2017 WL 5593471, at *2 (W.D. Pa. Nov. 21, 2017). The District Court further rejected MRS's contention that DiNaples had not "suffered a concrete injury," explaining that DiNaples was injured by "the disclosure of confidential information." *Id.* And the District Court rejected MRS's argument that it was protected by the FDCPA's "bona fide error defense." 2017 U.S. Dist. LEXIS 192255, [WL] at *3. The District Court also certified the proposed class.

*DiNaples*, 934 F.3d at 278.

[1] *See, e.g., Stever v. Harrison,* 2017 U.S. Dist. LEXIS 103390, *13, *16-*21 (D. NJ July 5, 2017) (rejecting debt collector's argument that the use of barcode symbol did not violate Section 1692f(8) and that such a violation lacked standing -"It is Congress's concern of 'invasions of individual privacy' which underlie Plaintiffs' theory of concrete harm. Notably, the Third Circuit has recognized those privacy interests as an individual's 'status as a debtor' and the plaintiff's 'financial predicament.'" (quoting *Douglass*, 765 F.3d at 302-03)). *See also, Hartman v. Medicredit,* 2016 U.S. Dist. LEXIS 176660, *2, *7-*8 (W.D. Penn. Dec. 20, 2016)(denying motion to dismiss, and finding standing post-*Spokeo*, "On the outside of the letters, above Plaintiff's name, was a number, identified in the letters as the consumer number for Plaintiff . . . Plaintiff alleges a violation of the FDCPA - specifically, conduct by Medicredit that is identified in the FDCPA as an "unfair practice." 15 U.S.C. § 1692f(8). Plaintiff has a statutory right to be free from

**D. Plaintiff is Not Required to Allege and She Knows Someone Saw the Offending Envelope – the Mere Violation is Enough to Confer Standing**

FCR argues that Plaintiff has not suffered a significant injury by fearing that someone read the collection envelope and observed FCR's name on it. Dkt. 26, p. 6. FCR appears to argue that Plaintiff can only satisfy Article III standing if she can allege that she knows that someone read the envelope in question. *Id.* This argument ignores the fact that the mail carrier specifically assigned to Plaintiff's address delivered the letter. But to be clear, Plaintiff is not resting on this mere logical extension of her Complaint. Rather, the Third Circuit's decision in *DiNaples* completely shoots down FCR's specious argument:

> MRS is incorrect to suggest that "to establish Article III standing, [DiNaples] would have to show that someone actually intercepted her mail, scanned the barcode, read the unlabeled string of numbers and determined the contents related to debt collection — or it was imminent someone might do so." MRS Br. 16 (emphases omitted). The teaching of *Douglass* and *St. Pierre* is that the disclosure of an account number is itself the harm — it "implicates core privacy concerns,", and therefore is sufficiently concrete under *Spokeo* to establish an injury-in-fact. In other words, because the disclosure is the concrete harm here, DiNaples "need not allege any additional harm beyond the one Congress has identified." Her evidence that she received an envelope with a QR code containing private information was enough to establish a concrete injury.
>
> We hold that DiNaples has standing to sue.

*DiNaples*, 934 F.3d at 280 (pin-point citations omitted).

**E. The Cases that Defendant Has Cited to in Support of its Affirmative Defense Are Not on Point and Demonstrate That Defendant's Advancement of its Affirmative Defense is Without Merit and Vexatious**

FCR Collection Services' affirmative defense is vexatious in nature. A review of FCR Collection Services' seven (7) page Memorandum of Support shows demonstrates that FCR Collection Services' response fails to cite to a single case that has held that a

---

such conduct and the alleged violation of that right constitutes a concrete injury. Thus, she has standing to pursue this action in federal court.")

violation of 1692f(8) does not satisfy Article III standing. To recap, page two of FCR Collection Services' Memorandum simply refers to general principles underlying Article III standing. Page three of FCR's memorandum cites to a single FDCPA based Seventh Circuit case, *Casillas v. Madison Ave. Assocs.*, 926 F.3d 329 (7th Cir. 2019) where the case was decided at summary judgment and where the Seventh Circuit held that a mere *procedural violation* – the *failure* to properly *identify* certain verification *language* – not the improper use of prohibited language (as is the case here) did not satisfy Article III standing.

*Casillas* is not on point because it dealt with an alleged violation of Section 1692g(a) where the putative class representative did not seek to utilize a statutory based *procedural* right that was denied to him. *Id.* at 332 ("Casillas filed a class action against Madison because of that omission. She did not allege that she tried—or even planned to try—to dispute the debt or verify that Harvester Financial Credit Union was actually her creditor.").

The Seventh Circuit properly rejected Mr. Casillas' contention that the debt collector's violation of 1992g(a) "constitute[d] a material/concrete breach of her rights under the [Act]." *Casillas*, 926 F.3d at 332. Because Mr. *Casillas* identified a *procedural harm*, the failure to provide a disclosure he admittedly did not rely on, he lacked standing:

> The Fair Debt Collection Practices Act protects an entirely different interest, and as we have already said, Casillas alleged no material risk of harm to that interest . . . Casillas did not allege that she would have used the information at all.
>
> ***
>
> Casillas says that the Fair Debt Collection Practices Act has likewise conferred on all debtors a right to complete information about their statutory rights. And as in *Havens Realty*, Casillas says, it is enough for her to claim that she was deprived of the information to which she was legally entitled—even if she wouldn't use it.

10

***

> In sum, Casillas alleged nothing more than a bare procedural violation of the Fair Debt Collection Practices Act. That is insufficient for purposes of Article III. See *Spokeo*, 136 S.Ct. at 1549.

*Id.* at 338-39.

In contrast, unlike Section 1692g which points to certain language that debt collectors should convey if a debtor chooses to contact a debtor in response to the articular rights (a two-part "disclose and use" interplay of the *procedural* rights conferred by Section 1692g(a)), Section 1692f states that [a] debt collector *may not use* unfair or unconscionable means to collect or attempt to collect any debt." (Emphasis supplied). Similarly, in contrast to certain disclosure required by Section g, Section f(8) states that "the following conduct **is a violation of this section** for a debt collector to use:

> any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, *except that a debt collector may use his business name* if such name does not indicate that he is in the debt collection business.

(Emphasis supplied).

Simply stated, Section 1692f(8) identifies a type of disclosure that debt collectors <u>are prohibited from using</u> and FCR's envelopes clearly violated the statutory provisions expressed by Section 1692f(8). In reversing the district court, *Preston* recognized that the <u>prohibitions</u> of Section 1692f(8) are no mere procedural rights:

> We conclude that the language of § 1692f(8) is clear, and its application does not lead to absurd results. To the contrary, <u>the prohibition of any writing on an envelope containing a debt collection letter represents a rational policy choice by Congress</u>.
>
> * * *
>
> On its face, <u>the prohibition is clear</u>: use of *any* language or symbol on an envelope, except for the debt collector's name (if it does not indicate that the collector is in the business of debt collection) and the debt collector's address, violates subsection (8).
>
> ***
>
> <u>The statutory language does</u>, in fact, <u>prohibit debt collectors from sending communications to consumers in envelopes bearing</u>

11

> symbols that are indicative of debt collection. The language of the statute simply draws a clear line to ensure that consumers' rights are not lost in the interpretation of more subtle language.
>
> ***
>
> When a debt collector communicates with consumers through the mails, <u>it may not use any language or symbol on the envelope except for its business name or address, as long as the name does not indicate that he is in the debt collection business</u>. Turning to the facts here, there is no question that the language "TIME SENSITIVE DOCUMENT" appears on the envelope enclosing a communication to a consumer. It is equally apparent that the language at issue does not fall within the itemized exception set forth in subsection (8): It is not Midland's name nor its address. The inclusion of this phrase thus violates § 1692f(8), and the district court erred in dismissing the claim set forth in Count I of Mr. Preston's complaint.

*Preston*, 2020 U.S. App. LEXIS 1775 at *2, *11, *16-*18 (underlining supplied,).

Simply stated, FCR's Article III defense is mistaken (at best) where it is clear that the mere *procedural violation* of the *notification* of rights afforded by Section 1692g(a) did not state a concrete injury under *Spokeo* where (at the summary judgment stage) the plaintiff did not intend to use the omitted rights. What FCR did is worse. FCR ignored what is prohibited by Section 1692f(8), formatted the collection envelope to unlawfully display that it is a debt collector and sent out the offending envelope to over 4,500 Illinois residents. FCR Collection Services' citation to *Meyers v. Nicolet Restaurant of De Per, LLC,* 843 F.3d 724 (7th Cir. 2016) is totally misplaced because *Meyers* involved the Fair and Accurate Credit Transactions Act ("FACTA") and the publication of credit card information (more than an allowed number of digits by FACTA, but less than entire credit card number). What FCR Collection Services fails to recognize – much less explain to this Court is that the Seventh Circuit in *Meyers* held the mere disclosure of less than the full number of the credit card numbers did not constitute an injury under FACTA because the disclosure of the number of digits at issue – *could not lead to identify theft*:

> Meyers did not suffer any harm because of Nicolet's printing of the expiration date on his receipt. Nor has the violation created any appreciable risk of harm. After all, Meyers discovered the violation

12

> immediately and nobody else ever saw the non-compliant receipt. In these circumstances, it is hard to imagine how the expiration date's presence could have increased the risk that Meyers' identity would be compromised. *See id.* at 1550 ("It is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm.").
>
> Moreover, Congress has specifically declared that failure to truncate a card's expiration date, without more, does not heighten the risk of identity theft. In the Credit and Debit Card Receipt Clarification Act of 2007, Congress made a finding of fact that "[e]xperts in the field agree that proper truncation of the card number, by itself as required by the [FACTA], regardless of the inclusion of the expiration date, prevents a potential fraudster from perpetrating identity theft or credit card fraud." Pub. L. 110-241, § 2(a)(6).

*Id.* at 727-28. *Meyers* has no application to a clear-cut violation of Section 1692f(8).

In addition to a clear statutory violation, Plaintiff identified how FCR's name on the collection envelope harmed her and violated her privacy rights. *See, e.g.,* Dkt.#1, ¶30 ("After reading the Envelope, and realizing that Defendant was a debt collector, Plaintiff became nervous and her heartbeat increased" and "[a]n unsophisticated consumer, reading the name 'FCR Collection Services' through the Envelope's glassine opening, would recognize or understand that Defendant is a debt collector.").

FCR's citation to *Lavallee v. Med-1 Solutions, LLC*, 932 F.3d 1049 (7th Cir. 2019) is a perfect example of the long-ago criticized practice of "headnote citation and quotation" *Lavelle,* just like *Casillas,* involved a debt collector's failure to provide certain statutory language. The present case is completely different because FCR violated the FDCPA by including prohibited words on the envelope – FCR's name and the fact that it is a debt collector. Unlike *Casillas* and *Lavelle* which involved inaction by a debt collector by failing to provide procedural disclosures, Plaintiff's right to privacy was violated by FCR failing to abide by the clear prohibitions of Section 1692f(8).

Bizarrely, in refusing to discuss *Preston v. Midland*, Defendant's Memorandum relies to *Crabtree v. Experian Information Solutions, Inc.,* 948 F.3d 872, 2020 U.S. App.LEXIS 2698 (7th Cir. 2020), where defense counsel to FCR – represented the losing

13

plaintiff. In simultaneously defending class actions for debt collectors *and* attempting to certify class actions for a somewhat conflicting other clients (consumers), FCR's counsel ended up on the losing end of a Fair Credit Reporting Act case. *Crabtree* has nothing to do with the claims currently before the Court. At the summary judgment stage, *Crabtree* found that plaintiff lacked standing for three (3) reasons. First, he was not aware of any purported FCRA violation until told by his counsel. Second, he did not "come forward with something showing that he did not receive a firm offer", and three, his emotional distress damages were specious at best, where he only learned of the alleged FCRA violation from his lawyers – five (5) years after the fact. *Id.* at *6, *14-*15. This was not the first time that FCR's counsel represented a consumer in a failed class action.[1]

### IV. Conclusion

FCR Collection Services' affirmative defense is without merit because it would lead to an absurd result if FCR Collection Services were allowed to so commit an *act* –

---

[1] Here is what the Seventh Circuit had to say in *Blow v. Bijora, Inc.* 855 F.3d 793 (7th Cir. 2017):

> [Plaintiff] Blow was chosen as class representative after problems arose with her two predecessors. The original named plaintiff, Nicole Strickler, worked as an attorney for the law firm filing the complaint, Messer & Stilp, Ltd. Strickler's connection with the firm emerged after the class had been certified, and Messer had filed a second amended complaint asserting claims against Akira and Opt It. Opt It then moved to disqualify the firm based on its failure to disclose that Strickler worked there. Strickler, through Messer, ultimately settled with Opt It and dismissed her claims against it.
>
> ***
>
> Akira also attacks counsel's failure to disclose that Strickler, the original named plaintiff, was a member of the law firm representing her.

*Id.* at 806-07. Here is how the Seventh Circuit viewed this conduct:

> This latter behavior certainly gives us pause, and we would hope Strickler and Messer would exercise better judgment in the future than using an attorney from their own firm as the named plaintiff in a class action.

*Id.* at 807.

the identification of itself on an envelope transmitting a collection letter – where this *form of conduct* is expressly prohibited of the FDCPA.

The envelope utilized by FCR Collection Services constitutes a clear violation of the FDCPA – just like the Seventh Circuit held in *Preston* where the Court held that a debt buyer violated the FDCPA by placing the words "**TIME SENSITIVE DOCUMENT**" on the envelope that used to transmit a debt collection letter. The Seventh Circuit's reversal of the district court was based solely upon the words of the envelope and not based upon the combination of the envelope and the enclosed letter. In fact, the Seventh Circuit held that the enclosed letters (in combination with the envelopes) *did not violate* the FDCPA. It is just that simple – debt collectors violate the FDCPA where they do not comply with Section 1692f(8) of the FDCPA. *Preston,* 2020 U.S. App. LEXIS 1775 *2-*3, *18-*25. ("we agree with the district court that the language on the envelope and in the letter does not violate § 1692e and, therefore, affirm the dismissal of the claims brought under that section.").

WHEREFORE, for the reasons set forth above, Plaintiff BONNIE J. CASTLE respectfully requests that this Court find that has standing to purse her Section 92f(8) claim and strike Defendant's subject affirmative defense.

Respectfully submitted,

*/s/ James C. Vlahakis*
2500 S. Highland Avenue, Suite 200
Lombard, IL 60148
Phone No.: 630-581-5456 Fax
No.: 630-575-8188
jvlahakis@sulaimanlaw.com

---

i



ECF#1, ¶¶7, 20.

## **CERTIFICATE OF SERVICE**

I, James C. Vlahakis, certify that on March 6, 2020, I caused to be filed the above referenced document via the district's ECF system, which shall serve a file stamped copy of this document on all counsel of record.

/s/ James C. Vlahakis